# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | Case No.: 2202013005 |
| | ) | |
| SAMUEL WATERS, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 2, 2024
Decided: May 8, 2024

## OPINION AND ORDER

*On Defendant's Motion for Judgment of Acquittal*

### DENIED

*Zoe Plerhoples, Esquire, Deputy Attorney General*, Attorney General's Office, 820 N. French Street, 7th floor, Wilmington, Delaware.
*Attorney for the State of Delaware.*

*John S. Malik,* Esquire, 100 East 14th Street, Wilmington, DE 19801.
*Attorney for Defendant*

**Jones, J.**

In September 2021 Samuel Waters ("Defendant" or "Waters"), was involved in two separate incidents involving two separate individuals where it was alleged that Waters used improper force, made false statements in warrants, and engaged in officer misconduct while he was in the course and scope of his official duties as a City of Wilmington police officer. The first incident involved an investigation of a domestic disturbance. The second incident involved an altercation with Dwayne Brown ("Brown") at a convenience store in Wilmington. An indictment was presented to the grand jury based on the two separate incidents. A New Castle County Grand Jury indicted Samuel Waters for Perjury Second Degree in violation of 11 *Del.C.* §1222, Tampering with Physical Evidence in violation of 11 *Del.C.* §1211, three counts of Assault Third Degree in violation of 11 *Del.C.* §611, and one count of Falsifying a Business Record in violation of 11 *Del.C.* §871. Counts 1 through 3 of the indictment involved the domestic disturbance. The remaining counts (counts 4 through 7) involved the Brown encounter.

A jury trial began on June 23, 2023. On June 26, 2023, the jury returned its verdict. The jury acquitted Waters as to all counts involving the domestic disturbance. As to the matter involving Brown, the jury found Waters guilty of Official Misconduct, Tampering with Public Records, Falsifying a Business

1

Record, and Assault Third Degree.  The jury acquitted Waters of the Perjury Second Degree charge.

Waters has filed a Motion for Judgment of Acquittal pursuant to Superior Court Criminal Rule 29.  Waters makes two arguments.  First, Waters argues that the jury's acquittal on the Perjury Second Degree charge is inconsistent with the conviction on the Tampering charge.  Second, Waters contends that there was insufficient evidence to support a finding of guilt for Official Misconduct and Falsifying a Business Record.

## INCONSISTENT VERDICT

In Count Five of the indictment, Defendant was charged with Perjury in the Second degree in violation of 11 *Del. C.* §1222.[1] To convict for Perjury, the State must prove beyond a reasonable doubt that a defendant has "sworn falsely and [that] the false statement is: 1) made in a written instrument for which an oath is required by law; 2) made with intent to mislead a public servant in the performance of official functions; and 3) material to the action, proceeding, or matter involved."

The indictment specified that Defendant was charged with Perjury for his acts of writing a warrant against Brown wherein he indicated that he "immediately recognized Mr. Brown" and later admitted to the hospital constables (on body-

---

[1] A18.

2

worn camera) that he did not know Brown.[2] The jury was instructed on each element of the offense.[3] At trial, the State introduced evidence intended to show that Defendant had made a false statement in the affidavit attached to his warrant for Brown's arrest, namely, that he "immediately recognized Mr. Brown," that the statement was intended to mislead the magistrate who issued the warrant, and that the statement was material to the magistrate's decision and performance of their functions in issuing the warrant.

In Count Six of the indictment,[4] Defendant was charged with Tampering with Public Records in violation of 11 *Del. C.* §876, which reads as follows:

> A person is guilty of tampering with public records in the first degree when, with intent to defraud, and knowing that the person does not have the authority of anyone entitled to grant it, the person knowingly removes, mutilates, destroys, conceals, makes a false entry in or falsely alters any record or other written instrument filed with, deposited in or otherwise constituting a record of a public office or public servant.

The Tampering charge was factually predicated upon Defendant's police report regarding his arrest of Brown and specified two statements in the report as false: 1) Defendant's statement that he was "immediately familiar" with Brown;" and 2) Defendant's description of his use of force towards Brown. The jury was instructed as to the elements of a Tampering charge in the jury instructions. The

---

[2] *Id.*
[3] A437-438.
[4] A18-19.

instructions also set forth the two allegedly false statements and instructed the jury that their "verdict must be unanimous as to which of the two incidents, if any, you rely upon as a basis for your verdict."[5]

The Perjury charge as alleged in the indictment was premised on Defendant falsely swearing that he recognized Brown "immediately" and that the false statement was material to the magistrate's decision to issue a warrant and set bail. The state had to prove both elements, falsity and materiality, to prevail on that charge. The jury was free to accept or reject the evidence at trial on the issue of whether Defendant knew Brown's name or his face, or both.

By contrast, the Tampering charge required only that the State prove that Defendant made a false entry in a public record, in this case, a police report, not that the statement was "material." Moreover, the jury had two statements to choose from, and they were instructed that they must be unanimous in determining which statement was false. The false entry could have been Defendant's statement that he recognized Brown immediately, or his description of the use of force, which was also captured by surveillance video. The jury viewed the video multiple times throughout the trial and was therefore free to draw their own conclusion as to whether Defendant's statements in the report matched what they saw in the

---

[5] A439-440.

4

video. The jury could find tampering without the need to find whether Waters recognized Brown immediately.

An inconsistent verdict occurs when, in a single trial, one of the convictions necessarily established an element which is incompatible with an element necessary to the other convictions. The two contradictory elements cannot coexist.[6] That is not the case here. Defendant concedes that the Perjury and Tampering charges are not statutory compound crimes as neither offense is an element of the other offense, and the conviction of one offense is not a predicate for conviction on the other.[7] Defendant also concedes that a rational factfinder could find sufficient evidence for the Tampering conviction based on the record evidence.[8] The jury could have found the Tampering charge was based on Waters description of the force used against Brown and not based on whether Waters knew Brown. Such a finding supports the conclusion that the verdicts on the two charges are consistent.

Defendant argues that because the jury was not required to state their factual basis for the finding of guilt on the Count of Tampering, it is possible to speculate that the jury's verdict was inconsistent. But all the Defendant can do is speculate because he has not presented any evidence that would tend to show improper or

---

[6] *Tilden v. State*, 513 A.2d 1302 (Del 1986).
[7] Def. Op. Br., at 19.
[8] *Id*.

inappropriate deliberations, nor any reason to intrude into the jury's deliberative process in this case. As the United States Supreme Court noted in *Powell*:

> We also reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. *Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation or would require inquiries into the jury's deliberations that courts generally will not under*take. Jurors, of course, take an oath to follow the law as charged, and they are expected to follow it.

Delaware Courts have also recognized this principle.[9] This Court will not engage in speculation, nor will it inquire into a jury's deliberations. There is simply no evidence overcoming the presumption that the jury did not follow the Court's instructions.[10] In fact, the verdict leads to a conclusion that the jury did follow the Court's instructions in applying the law to the facts. Defendant's motion based on the argument that the verdict was inconsistent is **DENIED**.[11]

### SUFFICIENCY OF EVIDENCE TO SUPPORT A FINDING OF GUILT FOR OFFICIAL MISCONDUCT AND FALSIFYING A BUSINESS RECORD

Supreme Court Criminal Rule 29(c) permits a motion for judgment of acquittal pursuant to Rule 29(a) after the jury returns a verdict of guilt. A motion

---

[9] *State v. Thompson*, No. 2005007025, 2021 WL 6014939 (Del. Super. 2021).
[10] *Smith v. State*, 963 A.2d 719 (Del. 2008).
[11] Defendant has raised a constitutional challenge as to whether Delaware law permits inconsistent verdicts. As this Court has determined that the verdict is not inconsistent, this Court need not address the constitutional issues.

for judgment of acquittal pursuant to Rule 29(a) may be granted if "the evidence is insufficient to sustain a conviction of such offense or offenses." When considering a motion for a judgment of acquittal, the Court examines "whether any rational trier of fact, viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime."[12] The mere fact that evidence is in conflict does not render it "insufficient."[13] When the facts are viewed as required, this Court concludes that there is sufficient evidence to sustain the verdict.

Defendant was charged with Official Misconduct in violation of 11 *Del. C.* §1211(a)(1) for his encounter with Brown on September 21, 2021, and his inappropriate use of force, in that he intended to harm someone (Brown) or to obtain a benefit in the exercise of his authority.[14] Defendant argues that the State did not introduce any evidence tending to show that he intended to harm Brown, or to obtain a benefit in the exercise of his authority. This argument ignores the record evidence and the law regarding how a jury may infer intent from a defendant's conduct.

---

[12] *Castro v. State*, 266 A.3d 201, 204 (Del. 2021).
[13] *State v. McGuiness*, No. 2206000799, 2022 WL 3971195, at *4 (Del. Super. Aug. 30, 2022) (quoting *State v. Dixon*, No. 2109010261, 2022 WL 2840041, at * 2 (Del. Super. July 20, 2022)).
[14] A16-17.

Pursuant to 11 *Del. C.* §307:

(a) The defendant's intention, recklessness, knowledge, or belief at the time of the offense for which the defendant is charged may be inferred by the jury from the circumstances surrounding the act the defendant is alleged to have done. In making the inference permitted by this section, the jury may consider whether a reasonable person in the defendant's circumstances at the time of the offense would have had or lacked the requisite intention, recklessness, knowledge, or belief.

(b) When the defendant's intention, recklessness, knowledge, or belief is an element of an offense, it is sufficient to establish a prima facie case for the State to prove circumstances surrounding the act which the defendant is alleged to have done from which a reasonable juror might infer that the defendant's intention, recklessness, knowledge, or belief was of the sort required for commission of the offense.

The State produced the following evidence at trial: Defendant confronted Brown in the 3 C's convenience store and attempted to detain him. When Brown did not immediately comply, Defendant elevated his use of force to deadly force, slamming Brown's head forcibly against a plexiglass window. A civilian who witnessed the encounter called Defendant "out of control," and stated that his actions were disproportionate to the situation. Evidence adduced at trial also showed that Defendant was aware of, or had at least been trained in, the use of force and defensive techniques.[15] The Wilmington Police Department's ("WPD") use of force instructor stated that not only was Defendant's use of force against policy, but

---

[15] A277-281.

that striking a suspect in that manner could cause serious physical injury or death. Defendant's own expert, another former use of force instructor, noted that Defendant was likely stressed out by Brown's initial non-compliance and so striking his head into the plexiglass was just "what he chose to do."[16]

The jury was free to draw logical inferences from Defendant's conduct before, during, and after the encounter. Notably, Defendant did not turn on his body-worn camera prior to entering the store and confronting Brown, a clear violation of WPD policy. Defendant attempted to gain immediate compliance from Brown. When Brown questioned why he was being detained in a non-aggressive manner, Defendant wasted no time in escalating his use of force with Brown, and used a tactic not supported, encouraged, or taught by WPD. Defendant did not accurately describe his knowledge of Brown in a sworn warrant affidavit or in his police report, and his account in his police report distorted and minimized his conduct.[17]

The jury could infer from the video surveillance footage, combined with Brown's testimony and the witness's testimony, the assessment by the State's use of force expert, and Defendant's after the fact actions that Defendant intended to harm Brown at the moment he used disproportionate deadly force against him and

---

[16] A404.

[17] "Simultaneously this officer grabbed Brown's [sic] left Trapezius and stepped forward." Defendant did not note that his hands were anywhere near Brown's head/skull area, i.e., the "red zone."

put him at risk of serious physical injury or death during what should have been a routine encounter for a misdemeanor complaint. There was sufficient evidence to convict Waters of Official Misconduct.

There was also sufficient evidence to find Defendant guilty of Falsifying a Business Record.[18] In the indictment, Defendant was specifically charged with "omitting relevant facts in his police report regarding his interaction with [Brown]."[19] There was no dispute at trial that the police report was a business record, or that Defendant was under a legal duty to write an accurate police report. The State also successfully showed that Defendant omitted some key facts in his report detailing his use of force and that it was a logical inference that he did so because he knew his use of force was not appropriate.

The evidence supporting the Tampering charge also supports the Falsifying charge. As noted above, Defendant did not write in his police report that he placed his hands in the area of Brown's head/skull and forcibly pushed Brown into the plexiglass window, a physical encounter that the jury viewed for themselves, on surveillance footage. Defendant instead wrote that he grabbed Brown's trapezius and "stepped forward," causing Brown to press against the glass. This is not consistent with the surveillance footage, nor is it consistent with the witness who

---

[18] Defendant was charged under 11 *Del.C.* §871(b)(3).
[19] A19-20.

testified that Brown's head striking the plexiglass sounded like a "bomb going off."[20]  Given these conflicts between what Defendant wrote and what actually happened as shown by the evidence, a rational jury, viewing the evidence in the light most favorable to the State, could certainly find sufficient evidence to convict Defendant for omitting evidence in a business record, i.e., his police report.

There is sufficient evidence to support a finding of guilt for Official Misconduct and for Falsifying a Business Record.

For the above reasons, Defendant's Motion for Judgment of Acquittal is **DENIED**.

**IT IS SO ORDERED**.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge


cc:     *Original to Prothonotary*

---

[20] A201-202.